Mark KANE,

v.

Kenneth D. KYLER, et al.

No. CIV.A. 97–4208.

United States District Court, E.D. Pennsylvania.

Nov. 7, 2001.

Timothy P. Booker, Timothy P. Booker, P.C., Philadelphia, PA, Louis R. Busico, Newtown, PA, for petitioner.

Donna G. Zucker, Philadelphia, PA, Marilyn F. Murray, Dist. Atty. of Philadelphia, Philadelphia, PA, Thomas Dolgenos, Dist. Attorney;s office, Assist. Dist. Atty., Philadelphia, PA, for respondents.

## *MEMORANDUM*

LUDWIG, District Judge.

Upon remand of this 28 U.S.C. § 2254 habeas corpus petition,[1] the Court of Appeals held that an incorrect standard had been applied in granting relief for ineffective assistance of counsel on petitioner's direct appeal[2] of his Pennsylvania convictions for first degree murder and possessing an instrument of crime.[3] Accordingly, the habeas petition was referred again to Magistrate Judge Charles B. Smith, of this court, for a Revised Report and Recommendation utilizing the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2261 *et seq.*, as directed by the Court of Appeals decision. In his Revised Report and Recommendation, Judge Smith reached the same result as he had in the original one—specifically that the Commonwealth should either afford petitioner a new trial within 120 days

---

**1.** *Kane v. Kyler,* no. 99–1723, slip op. (3d Cir.2000).

**2.** *Commonwealth v. Kane,* 386 Pa.Super. 649, 555 A.2d 940 (1988), allocatur denied, 96 E.D. Allocatur Docket 1989 (direct appeal denied).

**3.** *Commonwealth v. Kane,* 449 Pa.Super. 722, 674 A.2d 315 (1995), allocatur denied, 5 E.D. Allocatur Docket 1995 (collateral review under Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* denied).

or vacate his conviction and release him from custody. That relief, upon careful consideration, will now be re-ordered. The Commonwealth's objections will be overruled; and the Revised Report and Recommendation will be adopted and approved subject to what is set forth in this memorandum.

## I. Ineffective assistance: failure to contest trial ruling on direct appeal

At trial, petitioner offered to present the alibi testimony of his father, Robert Kane, having given requisite pretrial notice. Asserting that his father had become non-ambulatory for medical reasons, petitioner made a sidebar request, in the alternative, for either a continuance; an authorization for an ambulance; or leave to videotape the father at his home.[4] The trial judge (Honorable George J. Ivins of the Philadelphia Court of Common Pleas) denied the request without making a record. Revised Report and Recommendation at 16. Respondent's position, which also represents the view implicitly adopted by the state courts on collateral appeal, is that the ruling was justified because the father's testimony would have been cumulative of alibi testimony to be given by petitioner's wife. *See* Respondent's Objections to Revised Report and Recommendation at 18–20; *Commonwealth v. Kane,* No. 2827–29, slip op. at 8–9 (Phila.C.P.Ct., February 27, 1995) ("PCRA Op.").

Robert Kane's alibi testimony, however, was not cumulative.[5] As discussed in the Revised Report and Recommendation, his testimony, from the defense standpoint, was vitally necessary because of a gap of approximately 20 to 45 minutes in the alibi testimony of petitioner's wife. Revised Report and Recommendation at 21–22. The murder, according to the prosecution, occurred during that hiatus. Testifying in his own defense, petitioner denied having been the perpetrator and stated that he was at home with his father and, for a time, with his wife, when the crime was committed. Only Robert Kane's unreceived testimony would have placed petitioner with him at the time of the murder and fully substantiated his alibi. *Id.*

Moreover, the prosecutor knew 1) of the father's purported indisposition; and 2) that the jury was unaware of it; as well as 3) of the trial judge's refusal to facilitate the presentation of his testimony. Nevertheless, the prosecutor argued to the jury in her summation: "Now the person who might have [provided an alibi covering the time of the shooting], if you believe the defendant and if you believe Denise Kane [the wife], would have been Mark Kane's father." N.T. 9/29/87 at 56. In sustaining the defense objection, Judge Ivins, an inveterate homicide trial judge, instructed the jury, somewhat opaquely, "None of this is material because none of it is evidentiary.... [Y]our function is to determine the facts, no ifs upon ifs—if someone, if someone, if someone. That is not your

---

4. While the request does not appear of record, the reviewing state courts accepted, and respondent does not dispute, that it occurred. *See Commonwealth v. Kane,* No. 2827–29, slip op. at 3 (Pa. Ct. Common Pleas February 27, 1995) ("PCRA Op."). At the PCRA Court's evidentiary hearing, trial counsel testified to making the request at a sidebar that he was "pretty certain" was held in an "anteroom." PCRA Hearing Transcript 9/29/94 at 9–10.

5. At an evidentiary hearing before the PCRA court, petitioner's trial counsel said this was an "alibi case" and referred to Robert Kane as an "essential witness." Revised Report and Recommendation at 26, PCRA Op. at 3. Petitioner's appellate counsel described Robert Kane's testimony as "about as crucial as you can get." PCRA Op. at 4–5. Counsel's untenable explanation for not raising the issue on direct appeal is discussed *infra* at p. 10 and note 19.

function, because that is only guesswork. That is why you are here. That's why we had a rather lengthy trial." N.T. 9/29/87 at 56–57. The defense also moved for a mistrial, which the trial judge denied, admonishing the prosecutor: "please don't do that again. . . . [P]roceed along the lines of what you know is required." *Id.* at 57.

Still, despite the explicit enjoinder, the prosecutor once more drew the jury's attention to the lack of an "alibi for the period of time of the shooting." *Id.* at 58. Upon sidebar, Judge Ivins denied defense's renewed motion for a mistrial, but noted: "For the record, I'm not certain that the district attorney has not gone beyond the pale, to use the old phrase. Namely, I think she has passed what she is permitted to do." *Id.* Yet the effect was that the prosecutor succeeded in advising—and reminding—the jury "not to look at the elephant" in the courtroom after the trial judge had refused to permit the defense to show that there was no "elephant"—*i.e.*, that there was, indeed, a complete alibi in the form of a witness whom, inferentially at least, the defense should have been able to call, namely, petitioner's father.

## II. Standard of review

As Magistrate Judge Smith articulated in his Revised Report and Recommendation, state court decisions are entitled to deferential habeas review under the AED-

PA.[6] *See* Revised Report and Recommendation at 8–11. Our Court of Appeals, in an exposition of *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), observed that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir.2000) (quoting *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389). Moreover: "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

## III. Ineffective assistance of counsel: *Strickland*

 Here, the state collateral courts—*i.e.*, the two PCRA reviews of the denial of the direct appeal by the Pennsylvania Superior Court—"unreasonably applied" the established precedent of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by denying petitioner's claim [7] of ineffective assis-

---

**6.** AEDPA:
> (d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

**7.** Petitioner also raised other ineffective assistance claims before the PCRA court—but this memorandum is confined to appellate counsel's failure to challenge the trial judge's refusal to accommodate the testimony of Robert Kane's father.

tance of appellate counsel.[8] Under *Strickland*, ineffective assistance requires a showing that: 1) "counsel's representation fell below an objective standard of [professional] reasonableness;" and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The "unreasonable application" clause of 28 U.S.C. § 2254(d)(1) applies to the state collateral courts' analysis of both parts of the *Strickland* test.[9]

### a. Reasonableness of counsel's representation

■■■■ Assuming Pennsylvania's "three-prong test" can be equated to the two-part *Strickland* test,[10] the state's collateral courts "unreasonably applied" the first part. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances .... [making every effort] to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 688–89, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.[11]

---

**8.** "It is past question that the rule set forth in *Strickland* [for assessing ineffective assistance claims] qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391, 120 S.Ct. 1495 (quoting 28 U.S.C. § 2554(d)). Moreover, "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims...." *Id.* (noting instances, not relevant here, where the *Strickland* test does not apply).

**9.** "Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d) ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052. Mixed questions of law and fact are reviewed under either the "contrary to" or "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1), but state court applications of *Strickland* generally fall under the "unreasonable application" standard. *See Weighall v. Middle*, 215 F.3d 1058, 1060–61 (9th Cir.2000) (citing *Williams v. Taylor*, 529 U.S. at 406, 120 S.Ct. 1495)

**10.** It is not entirely clear that the state collateral courts employed the *Strickland* test. Their "three-prong test" for ineffective assistance: "We first determine if appellant has raised an issue of arguable merit; we then assess whether counsel's action or inaction was strategically designed to assist appellant; and lastly we determine if appellant was prej-

udiced by his counsel's conduct." *Commonwealth v. Kane*, No. 486, slip op. at 2 (Pa. Superior Ct. Dec. 7, 1995) ("Super.Ct.Op."). Our Court of Appeals has treated at least the first part of this test as separate from *Strickland*. *See Sistrunk v. Vaughn*, 96 F.3d 666, 669 (3d Cir.1996).

On the other hand, the Pennsylvania Supreme Court has held that the *Strickland* and Pennsylvania tests "constitute an identical rule of law in this Commonwealth." *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 977 (1987). Therefore, the first part of the Pennsylvania test may be seen as included in the first part of *Strickland* in that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). As to the second part, the PCRA court explicitly cited *Strickland* in making its prejudice analysis. PCRA Op. at 7.

**11.** In other words, *Strickland* often requires habeas courts, in assessing counsel's representation, to look beyond clearly established Supreme Court precedents. So, for example, while "the *Strickland* test 'of necessity requires a case-by-case examination of the evidence,' [this] obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495 (citation omitted) (quoting *Wright v. West*, 505 U.S. 277, 308, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). A wide range of law and evidence can be relevant in applying *Strickland*.

**398**

■ Here, the state collateral courts did not make a particularized inquiry into the reasonableness, *at the time,* of appellate counsel's decision not to contest the ruling that resulted in the exclusion of the father's alibi testimony. Instead, they relied on a per se rule, not found in *Strickland,* that if a ruling does not constitute an abuse of discretion, there can be no arguable merit to an appeal.[12] This approach vitiates *Strickland*'s insistence that "every effort be made to eliminate the distorting effects of hindsight...." *Id.* at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ In this case, moreover, the trial judge unquestionably abused his discretion in not attempting in any manner at all to accommodate the father's proffered alibi testimony. The state collateral courts' conclusion to the contrary represents an "unreasonable application" of *Strickland*—especially because those courts appear to have considered only the refusal to grant a continuance and not the refusals to authorize an ambulance or to arrange for videotaped testimony. *See* Super. Ct. Op. at 2 (no error in "refusing a continuance"). These last two alternatives were practicable and would have made it possible to put the alibi testimony of petitioner's father before the jury without materially disrupting the trial. As compared to the denial of the continuance, the ambit of discretion for a denial of these relatively unobtrusive options should have been commensurately much narrower.

■ Furthermore, as Magistrate Judge Smith found, it was unreasonable to have concluded that the testimony was cumula-

tive and, as such, unnecessary. *See* Revised Report and Recommendation at 21–24. The state collateral courts regarded the father's alibi evidence as cumulative of the wife's alibi evidence—an inaccurate appraisement that in the course of the trial had the reverse effect of strengthening the prosecution's case. Moreover, the Pennsylvania rules of evidence, as well as federal, allow relevant evidence, however cumulative, to be excluded only if the "probative value is outweighed by ... considerations of ... *needless* presentation of cumulative evidence." Pa.R.E. 403 (emphasis added).[13] Robert Kane's alibi testimony and the wife's, together with petitioner's, could have significantly bolstered each other. Even to the extent that it was cumulative, Robert Kane's testimony can not be said to have been "needless."[14]

■ In addition, the state collateral courts "unreasonably applied" *Strickland* by not acknowledging petitioner's Sixth Amendment right to compulsory process as a limitation on the trial judge's discretion vis-a-vis the request to assist in making Robert Kane's testimony available. *See United States v. Cruz–Jiminez,* 977 F.2d 95, 100 (3d Cir.1992) ("The district court's discretion [whether to issue a writ of habeas corpus ad testificandum to secure a witness] ... must be limited by the Sixth Amendment right to have compulsory process...."); Revised Report and Recommendation at 13–21.[15] The Sixth Amendment provides criminal defendants the right "to have compulsory process for obtaining witnesses in his favor...." U.S. Const. Amend. VI. The Court has extended this clause to include not only the "sub-

---

12. The PCRA court: "The initial inquiry for this court is to determine whether defendant has raised an issue of arguable merit. Specifically, defendant *must demonstrate* that the *Honorable George J. Ivins abused his discretion by denying defendant's continuance request."* PCRA Op. at 8 (emphasis in original). The Pennsylvania Superior Court concurred, concluding that petitioner's ineffective assistance claim did "not have arguable merit" because "the [trial] court did not err in refusing a continuance." Super. Ct. Op. at 2.

13. Federal Rule of Evidence 403 is identical, except for the addition of "substantially" before "outweighed."

14. *See* 2 *Weinstein's Evidence* ¶ 403.06[1] at 403–56–60 (citing cases interpreting the "needless presentation of cumulative evidence" standard from the Federal Rules of Evidence).

poena power" [16] but more generally a criminal defendant's right to present witnesses or evidence in his defense, "even though [such a right] is not expressly described in so many words [in the text of the Sixth Amendment]." *Government of Virgin Islands v. Mills,* 956 F.2d 443, 445 (3d Cir. 1992) (quoting *Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 98 L.Ed.2d 798 (1987)). So viewed, the "Compulsory Process clause protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge." [17] *Id.* at 445–46. The only element of a compulsory process violation arguably in dispute here is whether the testimony in question would have been material and favorable to the defense.[18] *See* Revised Report and Recommendation at 16. However, it is self-evident that Robert Kane's testimony was not merely cumulative and could have altered the jury's determination of the facts.

*See* Revised Report and Recommendation at 21–28; *infra* part III.b.

■ Counsel's decision to forego this appellate issue cannot be sensibly rationalized. While appellate counsel, just as trial counsel, must make strategic choices about which issues to pursue, the abandonment of the trial judge's alibi witness ruling cannot be seen as part of an understandable appellate approach. Instead, it was a misperception or misjudgment on counsel's part not to recognize the likely dispositive merit of the abuse of discretion contention.[19] "Although appellate counsel cannot be blamed for trial counsel's errors [his failure to raise the abuse of discretion] issue on appeal could not reflect a plausible strategy to pursue more promising grounds. This is not a case in which an appellate attorney had several possible arguments to make, one of which was very strong and the others quite weak, and chose to focus on the strong argument rather than allow the weaker ones to dilute its strength. In this case, there was one

15. In discussing remand of the present case, our Court of Appeals noted on the basis of *Cruz–Jiminez* that "Sixth Amendment considerations are highly relevant to the state courts' determination of whether the trial court abused its discretion when it denied Kane's request for a continuance or other relief." *Kane v. Kyler,* No. 99–1723, slip op. at 17–18 (3d Cir.2000).

16. *Taylor v. Illinois,* 484 U.S. 400, 407, 108 S.Ct. 646, 98 L.Ed.2d 798 (1987).

17. *See, e.g., Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967) (Compulsory Process clause violated by state evidentiary rule prohibiting accomplices from testifying on each other's behalf); *Government of Virgin Islands v. Mills,* 956 F.2d 443, 448 (3d Cir.1992) (Compulsory Process clause violated when district court refused to allow a material witness to testify at trial); *Bennett v. Scroggy,* 793 F.2d 772, 776–77 (6th Cir.1986) (Compulsory Process clause violated when trial court arbitrarily refused to grant overnight continuance to allow defendant to secure a favorable witness that constituted defendant's only defense); *United States*

*v. Morrison,* 535 F.2d 223, 227–28 (3d Cir. 1976) (Compulsory Process clause violated where conduct by government forced defense witness to decline from testifying).

18. Sixth Amendment compulsory process rights are violated when a defendant "was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." *Government of Virgin Islands v. Mills,* 956 F.2d 443, 446 (3d Cir.1992) (citing *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)).

19. Referring to the trial judge's ruling, appellate counsel said, "[t]hat is a discretionary call on the part of the Court and I had to show an abuse of discretion. Now, an abuse of discretion is a much heavier burden that the mere error of law and once you're in trial, a Judge can do that." N.T. 9/29/94 at 27, 29.

sure winner—the argument that appellate counsel did not make." *Jackson v. Leonardo,* 162 F.3d 81, 85 (2nd Cir.1998).[20]

### b. Prejudice

 Here, also, the state collateral courts "unreasonably applied" *Strickland* in concluding that the trial judge's ruling was not prejudicial to the defense. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.[21] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Considering the importance of Robert Kane's testimony and the lack of justification for the trial judge's ruling, prejudice exists under any logical formulation of *Strickland* and requires the granting of relief under the AEDPA. *See* Revised Report and Recommendation at 25–28 (weighing the potential value of Robert Kane's testimony against the evidence presented for the prosecution, all of which had been "effectively challenged by the defense.")

### IV. Sixth Amendment compulsory process violation

Petitioner may also be entitled to relief on the independent ground that his Sixth Amendment compulsory process rights were violated. In remanding this case, the Court of Appeals found petitioner's Sixth Amendment compulsory process claim had met the exhaustion requirement of 28 U.S.C. § 2254(b). *Kane v. Kyler,* No. 99–1723, slip op. at 16 (3d Cir.2000) ("[W]e find that the petitioner fairly presented his Sixth Amendment [compulsory process] claim at all levels of the state court system."). While relief will not be ordered or a ruling made on this basis, there is a strong argument that the state collateral courts "unreasonably applied" federal law in not reaching and deciding petitioner's "fairly presented" compulsory process claim.[22]

### ORDER

AND NOW this 7th day of November, 2001, the following is ordered:

1. The objections of respondent Commonwealth of Pennsylvania's to the Revised Report and Recommendation are overruled.

2. The Revised Report and Recommendation is approved and adopted subject to the accompanying memorandum.

3. The petition for writ of habeas corpus is conditionally granted, 28 U.S.C. § 2254, and petitioner shall be released from custody, unless within one hundred twenty (120) days the Commonwealth attaches this case for a new trial.

4. There is no probable cause for appeal.

---

**20.** Appellate counsel raised two issues on appeal: "(1) prosecutorial misconduct depriving defendant of a fair and impartial trial and (2) deliberate attempts by the district attorney to destroy the objectivity and impartiality of the fact finder." Revised Report and Recommendation at 2.

**21.** In this context, *Strickland*'s prejudice standard applies, not the more demanding "actual prejudice" standard of *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The *Brecht* standard applies only to "trial error" occurring "during the presentation of the case to the jury,"

not to a claim of ineffective assistance of trial counsel, or to a claim of ineffective assistance of appellate counsel. *Id.* at 629, 113 S.Ct. 1710 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *see Jordan v. Hargett,* 34 F.3d 310, 316 n. 5 (5th Cir.1994) (distinguishing trial errors from ineffective assistance of counsel issues).

**22.** The state collateral courts did not acknowledge petitioner's Sixth Amendment compulsory process claim or look to Sixth Amendment law, albeit they were "adequately

alerted" to the existence of this claim. *Kane* *v. Kyler,* No. 99–1723, slip op. (3d Cir.2000).